## APPEAL OF HIGGINBOTTOM.
### BARBER, Gdn., v. HADDOCK et al.

No. 24340.   March 3, 1936.

J. Thad Baker and Kelley & Grigsby, for plaintiff in error.

Reuel W. Little, for defendants in error.

PER CURIAM. This is an appeal from an order and judgment of the district court of Marshall county vacating a previous order of the county court of Marshall county with reference to the guardianship of Margaret V. Higginbottom. The facts as disclosed by the record are that Mrs. Higginbottom had been, at some time prior to September 1925, adjudged to be an insane person, and was at that time confined to the state institution for the insane at Norman, Okla. On September 7, 1925, E. T. Haddock, a son, filed his petition in the county court of Marshall county praying for the appointment of himself as her guardian. Later, and after notice, the court appointed him guardian of the person and estate of his mother, and he qualified.

On November 8, 1927, the guardian filed in the probate court a report for the period ending that day. So far as the record shows no notice of the hearing of this report was given, and the report was approved by the court on the same date that it was filed. As to the items of receipt, the guardian recites that during the period of time covered by the report he received government pension checks aggregating $1,500. Under his disbursement he recites:

"Amount paid out for ward as per itemized statement hereinafter set forth as follows:

"Minimum estimate of costs of board, room, clothing, medicine, doctor and hospital bills, operations, cash, and railroad fares from March, 1908, to December 20th, 1921, $20 per month for 165 months _____$3300.00
"Estimate paid for ward in last 6 years at $7 per month, 72 months _____ 432.00
"No charges for trips to Norman and Gdn. Fees _____$3732.00
"Total expenditures since last report including loans _____$3732.00
"Amount received for ward ____ 1500.00

"Balance due guardian by ward _$2232.00"

On February 26, 1930, the guardian filed a second report, which was likewise approved by the court on that date. In this report the guardian shows under the heading of "Receipts":

"Amount due guardian by ward from last report _____$2232.00

"Cash received for ward past 28 months ending with February pension payment _____ 1120.00"

The guardian proceeds to give the ward credit for this amount, but charges her with the sum of $135, which he says he paid out for her during the period of time covered by this report.

On September 11, 1930, the guardian filed his third and last report covering the period ending September 3, 1930. The same system is used with reference to the accounting, with the result that the guardian claimed that the ward was indebted to him in the sum of $1,092, and "It is further asked by guardian that this report be approved and said guardian discharged, including his bondsmen."

An order was entered by the court setting the hearing on this report for October 2, 1930; notice was published for three weeks, and on October 2, 1930, the county court made an order approving the report of the guardian and discharging the bondsmen. On this same date W. J. Haddock, another son of the ward, and a brother of the guardian, filed a nomination for the appointment of C. H. Barber to be the guardian of the ward, and on that date he was appointed and letters of guardianship were issued. Whether this was before or after the hearing on the report of E. T. Haddock, the guardian, does not appear from the record, but the order of the court approving the final report of the guardian, after reciting the appearance of the guardian in person and by his attorney, continues: "and no other appearances were made."

On January 2, 1932, the succeeding guardian filed in the county court in the probate proceeding his "motion to vacate order approving final account of E. T. Haddock, * * * for the reason that the final account does not reflect a proper accounting and settlement by said E. T. Haddock, the former guardian, of his doings as such guardian." Later, the succeeding guardian filed an amendment to his motion to vacate, contending that the charge of $3,732 made by the former guardian was "illegal and void and not a proper charge against said estate." When the original motion was filed in the county court, the former guardian filed his special appearance and plea to the jurisdiction of the court. This was overruled and he then filed a motion to dismiss the action of the succeeding guardian on the ground that the motion to vacate was, as a matter of law, insufficient to entitle the movant to the relief prayed for, and, further, that the motion was insufficient to confer jurisdiction on the county court.

The county court vacated the former order approving the final account and directed the former guardian to file a final report. The case was appealed to the district court, and that court reversed the county court. It is to review that judgment that this appeal is prosecuted. The order of the district court does not disclose on what theory that court reversed the county court, but the appellant in his brief states (and it is not contradicted by the appellee):

"The most important question to be decided, and the one which was so strenuously stressed by the defendants in error in the county court and in the district court, is, whether the county court has jurisdiction to vacate its former order approving the final account of the guardian, and requiring a rehearing thereon."

We agree that this is the question to be decided by this appeal.

By the terms of section 1474, O. S. 1931, the provisions of the statutes regulating the accounting by administrators are made applicable to settlements by guardians. Section 1348, O. S. 1931, provides:

"The settlement of the account and the allowance thereof by the court, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability their right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon the bond, at any time before final distribution; and in any action brought by any such person, the allowance and settlement of such account is prima facie evidence of its correctness."

It will be observed that the section authorizes two modes of procedure to persons under disability: First, by moving for cause to reopen or examine the account; or, second, to proceed by action against the executor or administrator (guardian in this instance) either individually or upon his bond, **at any time before final distribution.** The phrase "before final distribution" obviously refers to the settlement of an ad-

ministrator's accounts, and would seem not to be applicable to a guardian's accounts. What the Legislature undoubtedly intended by this phrase was that at any time prior to the final disposition of an administration or guardianship proceeding a person under disability may move to restate the accounts of an administrator, executor or guardian. Thus, under this section of the statute we think it clear that a person under disability could move to reopen a former administrator's accounts at any time prior to the final distribution of the estate by his successor. This is the natural conclusion from this section of the statute.

The same reasoning applies to the accounts of a former guardian. Until such time as the ward reaches majority, if a minor, or is restored to competency, if an adult, such person is under disability, and there necessarily can be no "final distribution" or final disposition of the guardianship proceedings. Under this statute, therefore, the county court has the authority and jurisdiction to reopen and examine the account. In the case of In re Johnson, 72 Okla. 174, 179 P. 605, it was said:

"It is now well settled that county courts of this state have full control and jurisdiction of all probate matters, and may at any time prior to the majority of the minor whose estate is involved in any proceeding pending in that court, upon proper notice and for sufficient legal grounds, modify or vacate any order or judgment made by said court in the interests of said minor."

The same rule applies with equal force to the estate of an insane person for whose person and estate a guardian has been appointed. The duty devolving upon the court is the same in each instance— the duty to protect the property and estate of the ward—and it can make no difference that in one instance the ward is a minor while in the other the ward is an insane person.

The authority and jurisdiction of the county courts, in proper cases, to vacate former orders, has been recognized by this court. In the case of Southern Surety Co. v. Chambers, 72 Okla. 307, 180 P. 711, it was held that the provisions of the statute relating to terms do not apply to the probate business of the county court, and that the court could vacate an order of approval of a guardian's report after the expiration of the term in which it was entered. In Cravens v. Lowe, 117 Okla. 83, 245 P. 50, it was held that a suit by a former ward brought within a year after attaining majority in the original guardianship proceeding pending in the county court, to set aside and vacate a portion of an order allowing fees, is a direct attack upon the judgment or order, and proper.

No reason appears why such procedure is improper as to a final account of a guardian where the ward is still under disability. The defendant in error urges that the proper method of attack in matters of this kind is by an action in the district court. The answer is that section 1348 gives two remedies to a person under disability. One by moving for cause to reopen and examine the account, and, second, by action against the guardian either individually or upon his bond. Since the statute authorizes two methods, the ward is at liberty, by her representative, to make her choice.

The guardian relies largely on the order of the court approving his final report. It is true that proper notice of this hearing was given as provided by the statute, but it is also true that the hearing was, in fact, an ex parte settlement. The record discloses that on the date of the hearing of the final report the succeeding guardian was appointed by the court, but whether before or after the hearing does not appear. In any event he did not appear at the hearing, and the order after reciting the appearance of the former guardian and his attorney continues, "and no other appearances were made." The ward, although admittedly an incompetent person, had no representation at this hearing. The guardian, Haddock, was obviously interested in obtaining the approval of his report and securing his discharge. The succeeding guardian (assuming he had in fact been appointed prior to the hearing) was not present and would not have been in a position to do much at that time had he been present. No guardian ad litem was appointed by the court to protect the interests of the ward. So far as the record discloses the ward was still confined to the State Hospital at Norman. A hearing on the final report of a guardian must necessarily be an adversary proceeding. No property of a person can be taken or the rights of any person affected except upon due process of law. Notice and opportunity to be heard are two of the essential elements of due process of law. Both are lacking in this case.

The remaining question is whether the pleading filed by the succeeding guardian was sufficient to justify or authorize the court to grant the relief prayed for. The original motion filed in the case was certainly vague and indefinite. It is merely

alleged that "the final account does not reflect a proper accounting and settlement by said E. T. Haddock, the former guardian, of his doings as such guardian." Under ordinary circumstances we would not hesitate to hold such allegations insufficient. But this court and the probate courts of this state owe all persons under legal disability a full measure of protection, and such courts and this court should not permit the rights of such persons to be lightly concluded against them to satisfy some technical rule of pleading. So far as the reports filed by the guardian are concerned there has been no accounting under the statutes of the state. Under section 1342, O. S. 1931, the guardian in rendering his account must produce and file vouchers for all charges, debts, claims and expenses which he has paid, which must remain in the court. Under section 1343 the guardian may be allowed any item of expenditures, not exceeding $15, for which no voucher is produced, if the item be supported by his own uncontradicted oath reduced to writing and certified by the judge, positive to the fact of payment, specifying when, where and to whom it was made, but even in this event the aggregate of such payments must not exceed $300. Under section 1344 notice of the guardian's annual accounts must be given by posting in three public places setting forth the day appointed for the settlement. None of these statutes have been complied with. The two so-called annual reports recite "No vouchers herewith attached." The so-called final report does not show any vouchers attached. The record does not disclose any notice of the hearing on either of the annual accounts, but the record does disclose that each of these annual reports was approved by the court on the date they were filed. It is obvious, therefore, that if any notice was in fact given, it was not sufficient for any purpose.

The so-called expenditures were not, so far as the reports disclose, expenditures at all. It is quite apparent that the guardian estimated that his mother owed him $3,732 for his support of her from March, 1908, to November, 1927, and that from this amount he deducted the full amount of the money he received as her guardian, leaving a claimed balance of $2,232. The record shows that no vouchers supported this charge. Each of the subsequent reports reflect a similar situation. Thus it appears that each of the statutes enacted for the protection of the ward and her property was wholly disregarded by the guardian and the

county court. We cannot put our stamp of approval on such practice. These statutes were obviously designed by the Legislature to protect the ward and her property. To permit them to be disregarded as they have been in this instance is to nullify them in effect, and this we are unwilling to do. They are wholesome and should be carefully enforced by the courts until such time as the Legislature sees fit to repeal or amend them.

It was the duty of the county court under such circumstances to protect the interests of the ward. Since that was not done, it is the duty of this court to protect the incompetent.

The order of the district court is, therefore, reversed, with directions to enter an order affirming the order of the county court, and remand the matter to the county court, with direction to allow the guardian, Haddock, a reasonable time thereafter to file in the county court a full and complete accounting as required by the statutes of this state.

The Supreme Court acknowledges the aid of Attorneys R. A. Barney and J. I. Howard in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barney and approved by Mr. Howard, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur.